# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|                                    |     |                          |
|------------------------------------|-----|--------------------------|
| UNITED STATES OF AMERICA,          | )   |                          |
|                                    | )   |                          |
| Plaintiff,                         | )   |                          |
|                                    | )   |                          |
| v.                                 | )   | Case No. 05-20017        |
|                                    | )   | 09-2492                  |
| FIDENCIO VERDIN-GARCIA,            | )   |                          |
|                                    | )   |                          |
| Defendant.                         | )   |                          |
|                                    | )   |                          |

## MEMORANDUM AND ORDER

Defendant Fidencio Verdin-Garcia was indicted on multiple charges of conspiracy, possession with intent to distribute, and distribution of methamphetamine, and use of a communications facility to facilitate the commission of a drug felony. A jury convicted him of 14 counts, and he received three life sentences and eleven four-year prison sentences, to run concurrently. Mr. Verdin-Garcia appealed, and the Tenth Circuit affirmed his conviction and sentence. *United States v. Verdin-Garcia*, 516 F.3d 884 (10th Cir. 2008).

Mr. Verdin-Garcia's case is once again before this court on his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 296). Mr. Verdin-Garcia also tendered a Memorandum in Support (doc. 297), three affidavits (docs. 298, 299, & 300), and excerpts of the record (doc. 303). The Government filed a Response (doc. 312). Mr. Verdin-Garcia sought permission to file an amended brief in support of

his § 2255 petition, and this court granted that request but only to the extent that the amended brief clarifies claims raised in the original § 2255 petition and does not raise any new claims (doc. 314). Mr. Verdin-Garcia tendered an Amended Memorandum (doc. 315), to which the Government responded (doc. 318). Mr. Verdin-Garcia filed a Reply (doc. 322). The court has considered all of these filings, and for the reasons set forth below, Mr. Verdin-Garcia's § 2255 petition is denied.

## I.    Standard of Review

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. The court must hold an evidentiary hearing on a section 2255 motion "'[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting § 2255). A court need not grant an evidentiary hearing where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also United States v. Sanchez*, No. 96-7039, 1997 WL 8842, *3 (10th Cir. 1997) ("[D]efendant's conclusory allegations . . . which contradict the record made at the plea hearing, were insufficient to require an

2

evidentiary hearing.").

Mr. Verdin-Garcia's § 2255 petition raises the following eleven grounds for relief: Ground 1 – ineffective assistance of counsel; Ground 2 – *Brady/Giglio* violation; Ground 3 – misconduct before the grand jury; Ground 4 – prosecutorial misconduct; Ground 5 – omissions in the record; Ground 6 – error in applying sentencing factors; Ground 7 – error in calculating relevant conduct; Ground 8 – improper enhancement for weapon; Ground 9 – improper enhancement for role in offense; Ground 10 – flawed warrants; Ground 11 – cumulative effect of errors.

## II.     Grounds 1, 3, and 7 – Ineffective Assistance of Counsel

Mr. Verdin-Garcia alleges several instances of ineffective assistance of counsel. To obtain relief under § 2255 on the grounds of ineffective assistance of counsel, a petitioner must establish that his lawyer's performance was deficient as compared to an objective standard of reasonable performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).   As the one raising the challenge, the petitioner "bears the burden of establishing that his trial counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Sallahdin v. Mullin*, 380 F.3d 1242, 1247-48 (10th Cir. 2004) (quoting

*Strickland*, 466 U.S. at 687).

The petitioner must also prove that counsel's deficient performance prejudiced his defense, "depriving him of a fair trial with a reliable result." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006) (citing *Strickland*, 466 U.S. at 687). Thus, to satisfy the prejudice prong, Mr. Verdin-Garcia must show that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Because Mr. Verdin-Garcia "must demonstrate both *Strickland* prongs to establish his claim, a failure to prove either one is dispositive." *Orange*, 447 F.3d at 796-97 (citing *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000)). "The performance component need not be addressed first." *Smith*, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697; *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

Count 1 of Mr. Verdin-Garcia's § 2255 motion includes 19 instances of alleged ineffective assistance of counsel. Count 3 and Count 7 also set forth ineffective assistance claims. The court notes that Mr. Verdin-Garcia's § 2255 motion is verified in compliance with Rule 2(c)(5) of the Rules Governing § 2255 Proceedings and also with 28 U.S.C. § 1746(2). *See, e.g.*, *United States v. Guerrero*, 488 F.3d 1313, 1315-16 (10th Cir. 2007) (noting the importance of allegations in a verified petition, as opposed

to an unverified supplemental memorandum).  Additionally, the court notes that the Government has tendered an affidavit from Theodore J. Lickteig, who served as Mr. Verdin-Garcia's attorney from May 17, 2005, when he was appointed by the court, until October 6, 2008, when the United States Supreme Court denied Mr. Verdin-Garcia's petition for cert.  Keeping in mind the weight of those two documents, the court evaluates Mr. Verdin-Garcia's claims of ineffective assistance.

*A.     Ground 1.1*

Mr. Verdin-Garcia asserts that his attorney was ineffective for his failure to prepare for trial.  Mr. Verdin-Garcia identifies several alleged deficiencies in his attorney's preparation, but each  specific item that Mr. Verdin-Garcia mentions he has also listed as a separate ground of ineffective assistance.  For example, Mr. Verdin-Garcia asserts in Ground 1.1 that his attorney was not prepared for trial and thus filed pretrial motions late.  That is also the substance of Ground 1.2 of his ineffective assistance claim.  Similarly, Mr. Verdin-Garcia argues in Ground 1.1 that his attorney failed to prepare by obtaining his own translation of the audio recordings.  Mr. Verdin-Garcia raises that specific complaint in Ground 1.5.  As such, those items will be addressed in conjunction with the specific claims that relate to them.

In support of his general claim that his attorney was not prepared for trial, Mr. Verdin-Garcia asserts that "a vast amount of the prosecution's presented evidence was left unchallenged by trial counsel."  Mr. Verdin-Garcia then quotes the court as asking counsel "[Y]ou still have no witnesses; is that right?" (Trial Tr. 2140.)  Mr. Verdin-

Garcia asserts that this comment was "vehemently expressed," and he uses that as support for his argument that his attorney failed to adequately prepare for trial.

In fact, however, the court was merely clarifying counsel's position. At that point in the trial, the Government had concluded its presentation of evidence, Mr. Verdin-Garcia's motion for judgment of acquittal was denied, and the court was ready to proceed with defense evidence. The court then clarified with Mr. Verdin-Garcia's attorney that he did not wish to present any evidence. As this court, the Government, and Mr. Lickteig himself recall, the question was merely a discussion of the next step in the trial and did not pass judgment or express any vehemence about Mr. Lickteig's lack of witnesses. *See United States v. Scully*, 798 F.2d 411, 412 (10th Cir. 1986) (providing that the district court may rely on its personal recollection, as long as it also reviews the record where available).

Thus, saving the discussion of specifically-alleged failures, Mr. Verdin-Garcia cannot support his general claim that his attorney was not prepared for trial.

B. *Ground 1.2*

Mr. Verdin-Garcia asserts that his attorney was ineffective because he filed pretrial motions late, prompting the Government to file a motion to strike the untimely motions (doc. 160). Even assuming the untimely filings constituted substandard performance, however, Mr. Verdin-Garcia cannot establish any prejudice because the court denied the Government's motion to strike and ruled on the untimely motions on substantive grounds (doc. 166).

*C.*      *Ground 1.3*

Mr. Verdin-Garcia claims that his attorney was ineffective for failing to inform him of all the evidence and witnesses in the case. Specifically, Mr. Verdin-Garcia contends that his attorney brought only two audio recordings when he visited Mr. Verdin-Garcia in custody, but never mentioned the "several hundred audio recordings" the Government intended to use. Mr. Verdin-Garcia maintains that his attorney also never told him about the fingerprint evidence the Government planned to introduce or about four Government witnesses—Arturo Zuniga, Brandy Walter, Octavio Giner, and Graciela Reynoso.

The Government disputes the factual basis of this claim. In his affidavit, Mr. Lickteig denies withholding this information from Mr. Verdin-Garcia. Mr. Lickteig avers that he specifically told Mr. Verdin-Garcia about the hundreds of audio tapes and about the proposed witnesses and the likely substance of their testimony. In addition, the Government filed witness and exhibit lists detailing the extensive evidence and testimony that would be presented at trial. Moreover, the Government attorney spoke personally to Mr. Verdin-Garcia prior to trial, advising him of some of the cooperating witnesses and the overwhelming evidence that would be introduced at trial.

Even without resolving this factual dispute, however, the court can find no prejudice, as required by *Strickland*, from the alleged failure of Mr. Verdin-Garcia's attorney to inform him about witnesses and audio tapes. Mr. Verdin-Garcia makes no argument that his knowledge of this information would have changed the outcome of the

proceedings. He does not, for example, assert that he would have pled guilty had he known the extent of the evidence against him. Thus even assuming Mr. Verdin-Garcia's attorney failed to inform him about witnesses and evidence, and even assuming that such conduct constitutes objectively unreasonable performance, Mr. Verdin-Garcia has made no argument that he was legally prejudiced by this failure.

D.    *Ground 1.4*

Mr. Verdin-Garcia contends that his attorney was ineffective for failing to secure an interpreter for court proceedings to provide Mr. Verdin-Garcia with a more accurate translation of happenings in court. Mr. Verdin-Garcia identifies one occasion on which the court noted that the interpreters' translation was not literally word for word. (Trial Tr. 1100-02.)

The court's comment about accurate translation occurred during a sidebar conference. The court noted small discrepancies between the questions and answers and the translation; on one occasion, for example, the court mentioned that the interpreter had used the polite form of *señor*, when nothing similar was spoken in English. The court did not believe the omission was material or done for an inappropriate reason, but the court took the opportunity to remind the interpreters of the necessity of translating questions and answers directly.

Mr. Verdin-Garcia has identified no reason why his attorney should have challenged the interpreters the court provided or should have made arrangements to secure another interpreter. This sidebar conference alone does not suggest that Mr.

Verdin-Garcia's attorney had a duty to hire an independent interpreter for court proceedings, particularly given the court's opinion that any omissions were minor and not material to the proceedings. Moreover, Mr. Lickteig avers, and Mr. Verdin-Garcia does not dispute, that Mr. Verdin-Garcia at no time suggested to him that there were problems with the translation of the courtroom events.

And finally, even assuming his attorney was deficient in this regard, Mr. Verdin-Garcia has identified no basis for finding prejudice other than to vaguely note that "out-of-courtroom events and information, concerning [his] understanding of what events occurred at trial," warrant an evidentiary hearing on this issue. This conclusory statement alone is insufficient to justify relief. *Arredondo*, 178 F.3d at 782.

### E.    Ground 1.5

Mr. Verdin-Garcia next contends that his attorney was ineffective for failing to have the audio tapes transcribed by a different interpreter. According to testimony at trial, Sara Gardner was the interpreter who translated and verified the accuracy of translations of the audio tapes. She testified that she works mostly for defense attorneys and the courts. Mr. Verdin-Garcia offers no reason why his attorney should have hired a different interpreter to review her translations. Indeed, Mr. Lickteig noted in his affidavit that he had no reason, either from Mr. Verdin-Garcia or from the courtroom translators, to believe there were any material problems with the translations. He therefore did not act unreasonably in opting not to hire an independent translator.

### F.    Grounds 1.6, 1.7, and 7

Grounds 1.6, 1.7, and 7 relate to the seizure of 110 pounds of methamphetamine from Mr. Verdin-Garcia's truck in Tennessee. Mr. Verdin-Garcia argues that his attorney should have located and interviewed witnesses surrounding this seizure and should have gotten police and lab reports to verify that the seizure was in fact of 110 pounds of methamphetamine.

Government witnesses and trial exhibits established that the seizure had in fact been made. Moreover, Mr. Lickteig attached to his affidavit reports prepared by two DEA agents that describe the methamphetamine that was seized. Thus, the decision to not seek out additional witnesses seems to have been a reasonable one, given the information Mr. Lickteig had.

G.      *Ground 1.8*

Mr. Verdin-Garcia contends that his attorney should have hired a private investigator to find "vital information" concerning his role in the offense, the source of the original wiretap transcriptions, and the seizure of 110 pounds of methamphetamine.

Although trial counsel must make reasonable investigations, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Here, it appears that Mr. Lickteig's decision not to use limited resources for a private investigator was reasonable, particularly given the above-mentioned evidence about the Tennessee seizure. Mr. Verdin-Garcia offers no suggestion about what "vital information" a private investigator might have found. And his conclusory allegations

are insufficient to support this ground, particularly in the face of the trial evidence.

*H.*      *Ground 1.9*

Mr. Verdin-Garcia asserts that his counsel was ineffective for failing to consult with him during trial. Specifically, Mr. Verdin-Garcia notes that there were problems with the interpreters and audio equipment during trial. Mr. Lickteig, in his affidavit, agrees that there were equipment problems, that Mr. Verdin-Garcia alerted him, that he informed the court, and that the problems were rectified. Mr. Verdin-Garcia does not suggest otherwise.

Mr. Verdin-Garcia also contends that his attorney "did not inquire as to whether Petitioner decided to inject or cross-examine any witnesses with Petitioner's facts." Mr. Verdin-Garcia then argues that he knew Graciela Reynoso's testimony had been coerced and that his attorney should have cross-examined her on that. In support of his knowledge that Ms. Reynoso's testimony was coerced, Mr. Verdin-Garcia submitted an affidavit (doc. 300) describing an incident from March 2006 when he and Ms. Reynoso were placed in adjacent holding cells in the federal courthouse. Mr. Verdin-Garcia contends that Ms. Reynoso told him that "the prosecution had coached her to say that [Mr. Verdin-Garcia] 'was selling drugs'" and that the prosecution "coerced, induced, and threatened her to testify 'only' about what the prosecution had coached her to say and 'nothing' else." According to Mr. Verdin-Garcia's affidavit, the prosecution told Ms. Reynoso not to say anything about her agreement with them.

Mr. Lickteig contends that Mr. Verdin-Garcia never shared this information with

11

him. Mr. Verdin-Garcia does not specifically contradict that point, although he does assert that Mr. Lickteig never *asked* if he had anything to share. On that issue, Mr. Lickteig avers that he gave Mr. Verdin-Garcia a note pad and pen throughout trial to make notes or ask questions, but that Mr. Verdin-Garcia never took advantage of that opportunity. Moreover, Mr. Lickteig notes, he cross-examined Ms. Reynoso about her testimony and about her plea agreement specifically (TT 1504-1510). On redirect, Ms. Reynoso testified that she was not required to testify as part of her plea agreement (TT 1516-17).

Given Mr. Verdin-Garcia's failure to use the lines of communication that Mr. Lickteig had offered (the paper and pen) and his failure to share his information about Ms. Reynoso, Mr. Lickteig was not ineffective for failing to follow-up on that point. Moreover, the court notes that he did in fact question Ms. Reynoso about her plea agreement. Thus, this ground cannot support an ineffective assistance claim.

I.      *Ground 1.10*

Mr. Verdin-Garcia argues that his attorney was ineffective for failing to raise a misidentification defense relating to the audio recordings the Government used at trial. The Government presented voice identification at trial from a Spanish-speaking officer who had collected voice samples for comparison. In addition, three witnesses who personally knew Mr. Verdin-Garcia testified and identified his voice on the audio recordings.

Mr. Lickteig avers that he had no factual basis on which to challenge the

12

identification. Mr. Verdin-Garcia's § 2255 motion provides none. Mr. Verdin-Garcia cites to a portion of the transcript where Ms. Reynoso admitted that there were some voices that she could not identify on some of the recordings she listened to. But again, given the sheer quantity of recordings and of voice identification testimony, the failure to vigorously pursue a misidentification defense was not unreasonable.

Moreover, the court notes, defense counsel did in fact express concern about the voice identification in response to a request from the jury to see the transcripts of the calls. The defense attorneys had some reservations about allowing the jury to use the transcripts during deliberation, and the court echoed concerns about "this voice identification issue and any concern the defendants might have about any undue emphasis" from the identifications contained in the transcripts. Ultimately, the defense attorneys made the strategic decision to acquiesce, but only with a limiting instruction given by the court (TT 2212-30). That decision was a reasonable strategy given the practical realities of audio recordings that were in evidence, and thus appropriate for the jury to consider, but were not in English and thus not understandable without a transcript.

J.      *Ground 1.11*

Mr. Verdin-Garcia next asserts that his attorney was ineffective for failing to request a continuance so that an expert witness could evaluate fingerprint evidence that the Government did not disclose until trial. Mr. Verdin-Garcia's attorney, however, had received copies of the Government's expert's report, including the finding that the print

belonged to Mr. Verdin-Garcia. Mr. Lickteig contends that the qualifications and methodology of the Government's expert were never in question and, as such, he had no reason to request a continuance for the sole purpose of hiring a separate expert. He also maintains, and Mr. Verdin-Garcia does not contradict, that he had no factual reason to challenge the expert's conclusion given that Mr. Verdin-Garcia never intimated that the fingerprint was not his.

> K. *Ground 1.12*

Mr. Verdin-Garcia contends that his attorney should have called a witness to contradict the Government's trial evidence. Specifically, Mr. Verdin-Garcia asserts that Government witness Brandy Walter testified that Mr. Verdin-Garcia and Miguel Romero were partners. This testimony, Mr. Verdin-Garcia maintains, was used to support the four-level enhancement for his leadership role in the criminal activities. But Mr. Verdin-Garcia's Presentence Investigation Report (PSIR) notes that DEA agents interviewed Juan Carlos Avina, Mr. Verdin-Garcia's nephew, who said that "Victor Cruz was the main individual involved in dealing methamphetamine." Mr. Verdin-Garcia argues that his attorney should have called the DEA agents who spoke with Avina to contradict the testimony given by Walter at trial.

Mr. Lickteig attached to his affidavit a copy of the DEA agents report regarding the interview with Avina. It specifically notes that Avina was "not being fully truthful in this interview." Because that particular statement would undermine Avina's assertion that Cruz was the main person responsible, Mr. Lickteig's decision to not call the DEA

14

agents to testify about that interview was a reasonable strategic decision.

Moreover, at the time of Mr. Verdin-Garcia's trial, Avina was a fugitive. Thus, the DEA agents' testimony about his statements would likely have been inadmissible hearsay. Mr. Lickteig, therefore, was not ineffective for opting not to pursue this testimony.

*L.    Ground 1.13*

Ground 1.13 is entitled "Whether the deficiencies in counsel's performance were severe enough that they could not be characterized as a strategic judgment," and it then proceeds to list some of Mr. Verdin-Garcia's many grounds of alleged ineffective assistance. This ground appears to be a cumulative-errors analysis, much like Ground 1.19. As such, the court will address both of those grounds together at the conclusion of the ineffective assistance discussion.

*M.    Ground 1.14*

Mr. Verdin-Garcia contends that his attorney failed to "object to numerous sections in the presentence investigation report," and that this failure "left the allegations in the PSIR completely undisturbed for appellate purposes . . . [and] directly affected Petitioner's ability to effectively challenge and competently seek the lowest end of the sentencing guideline range." In his Amended Memorandum of Law (doc. 315), Mr. Verdin-Garcia mentions specifically the PSIR's two-level enhancement under § 2D1.1 for presence of a weapon and the four-level enhancement under § 3B1.1 for Mr. Verdin-Garcia's role in the offense.

During sentencing, however, Mr. Lickteig objected to both of these increases. Regarding the § 2D1.1 increase, Mr. Lickteig argued about the lack of evidence connecting any weapon to the drug activity (TT 2260-61). The court found, however, that the evidence at trial clearly supported the two-level enhancement by establishing that Mr. Verdin-Garcia carried a firearm while trafficking drugs and that he advised others to do so as well (TT 2262-63).

Mr. Lickteig also challenged the § 3B1.1 enhancement for Mr. Verdin-Garcia's role in the offense. He argued that the true leaders of the criminal activity were in California and that Mr. Verdin-Garcia was merely a distributor, but not a leader or organizer himself. (TT 2263-62). This objection was overruled, and the court found evidence beyond a reasonable doubt that Mr. Verdin-Garcia directed a number of people in the drug-trafficking activity and thus qualified for the four-level leader/organizer enhancement (TT 2269-72).

Thus, Mr. Verdin-Garcia's allegation of ineffective assistance on these points cannot stand.

*N.     Ground 1.15*

Mr. Verdin-Garcia suggests that his attorney should have raised the spousal privilege to keep Ms. Reynoso from testifying against him. Mr. Lickteig explains in his affidavit why he chose not to raise such an objection. First, Mr. Verdin-Garcia and Ms. Reynoso were not actually married (TT 1460, 1506). Thus, to the extent they could possibly be considered married for purposes of the spousal privilege, it would have been

a common law arrangement which is not recognized in Missouri, the state where they lived.  Mo. Rev. Stat. § 451.040(4).

Moreover, Mr. Lickteig mentions an exception concerning the privilege of spousal communications which would allow testimony of communications between spouses regarding a future crime, or a crime in progress when the conversation occurs. *See* McCormick on Evidence 164-65, 199-200 (2d ed. 1972) (future crime); *United States v. Mendoza*, 574 F.2d 1373, 1381 (5th Cir. 1978) (crime in progress). "This exception is rationalized on the ground that the public benefit advanced by protecting marital communication is minimal, if not nonexistent, when spouses exploit their privacy to plan or perform criminal acts." *United States v. Neal*, 532 F. Supp. 942, 946 (D. Colo. 1982).

For these reasons, and because the privilege protecting marital communications is to be strictly construed, *Trammel v. United States*, 445 U.S. 40, 50 (1951), Mr. Lickteig did not act unreasonably in failing to raise the issue.

### O.    Ground 1.16

Mr. Verdin-Garcia argues that his attorney was ineffective for failing to request a *James* hearing so that he could challenge out of court statements made by a co-conspirator.  *See, e.g.*, *United States v. James*, 590 F.2d 575 (5th Cir. 1979), *partially overruled by Bourjaily v. United States*, 483 U.S. 171 (1987).

In the Tenth Circuit, however, an attorney is not required to request a *James* hearing.  The underlying issue of the admissibility of the out-of-court statements may be

addressed by the court through a more informal procedure of provisionally admitting the statements with the caveat that the Government prove the existence of the conspiracy through the testimony and evidence at trial. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

Here, Mr. Lickteig requested a *Bourjaily* ruling, and the court provisionally admitted the statements with the understanding that the Government would prove the existence of the conspiracy and, thus, the admissibility of the statements under Rule 801 of the Federal Rules of Evidence. Under Tenth Circuit precedent, that is a perfectly acceptable way to resolve the issue of out-of-court co-conspirator statements.

P.     *Ground 1.17*

Mr. Verdin-Garcia asserts that his attorney was ineffective for conceding to a three-level increase to his base offense level and for failing to explain his decision to do so. This "concession" came within the context of Mr. Lickteig's objection to the § 3B1.1 enhancement for Mr. Verdin-Garcia's role in the offense. The Government sought a four-level increase, arguing that Mr. Verdin-Garcia was a leader or organizer. In objecting to that increase, Mr. Lickteig argued that he should instead be categorized as a manager or supervisor, and thus eligible for only a three-level increase. Thus, Mr. Lickteig made a strategic decision to argue for a smaller enhancement, rather than to argue in the face of the overwhelming evidence before the court that Mr. Verdin-Garcia played no role in the criminal activity. This was a reasonable strategic decision, particularly given the court's finding that the evidence established beyond a reasonable

doubt that Mr. Verdin-Garcia was in fact a leader or organizer.

Q.    Ground 1.18

Mr. Verdin-Garcia complains of a general lack of communication from his attorney. He asserts that throughout his case, he "made numerous inquiries and notices vaguely outlining the breakdown in communication." He attached various documents in support of this contention, but none of those documents explains the communication breakdown.

For example, Mr. Verdin-Garcia attached to his motion three letters he wrote to Mr. Lickteig several months after his trial to discuss sentencing issues, including one thanking Mr. Lickteig for a recent visit (Excerpts of Record ("ER") 5-7) . Mr. Verdin-Garcia, however, makes no assertion that his letters and questions went unanswered.

He also attached a copy of a pro se motion to dismiss Mr. Lickteig and a letter he sent to this court concerning that motion. Both were submitted after Mr. Verdin-Garcia's case was already on appeal, and so the motion was forwarded to the Tenth Circuit for consideration. The motion itself, however, merely notes a laundry list of complaints about Mr. Lickteig: "deprived me to obtain an adequate and effective defense . . . lack of communication, and lack of attorney and client privilege . . . lack of interest to defend my case . . . [and] conflict of interest." The letter written to this court a month after the motion was filed only mentions a previously-stated conflict of interest. Mr. Verdin-Garcia did not elaborate on these assertions in the motion itself or in his § 2255 motion and memorandum.

Mr. Verdin-Garcia attached copies of motions filed with the Tenth Circuit during his appeal, but again, none further describe the communication breakdown Mr. Verdin-Garcia is alleging. The "Status Motion" (ER 11-12), only mentions "various dissatisfactions with [Mr. Lickteig's] performance at trial." Mr. Verdin-Garcia's pro se motion to the Tenth Circuit for a new attorney on direct appeal (ER 13-17) also mentions a conflict of interest and ineffective assistance rendered at trial. The motion mentions a letter from Mr. Lickteig sent with the trial transcripts that contained "not much information" about the status of the case. The motion does not otherwise discuss any communication problems between Mr. Verdin-Garcia and Mr. Lickteig.

In a letter addressed to Mr. Lickteig dated May 20, 2007 (ER 18-22), Mr. Verdin-Garcia offers several suggestions of arguments to raise on appeal, but makes no mention of a communication breakdown. A later letter to Mr. Lickteig, dated June 16, 2007 (ER 23-24), purports to have been sent along with birth certificates of Joel and Arturo Zuniga (to support a citizenship argument Mr. Verdin-Garcia sought to raise). That letter notes that Mr. Lickteig had called Mr. Verdin-Garcia's case manager about two weeks prior and had said he was going to mail a copy of the Government's brief on appeal. Mr. Verdin-Garcia asserted that he had not yet received it. Later in the letter, he writes "Please reply to my letters and requests. Especially when I ask you to send me legal documents in the proceedings. Please don't wait until the last minute to send them for I need to know and read – with enough time – what's going on with my appeal."

Mr. Verdin-Garcia also attached a letter he wrote to the Clerk of the Tenth

Circuit, dated July 2, 2007, to "complain about my court appointed counsel Mr. Lickteig, who despite my numerous petitions does not answer my letters to inform me of the proceedings in my case" (ER 25-26). The only specific example Mr. Verdin-Garcia provides in that letter, however, is that he had not received a copy of the Government's brief on appeal.

Mr. Verdin-Garcia also submitted an affidavit (doc. 298) specifically addressing his communication issues with Mr. Lickteig. In that document, Mr. Verdin-Garcia avers that Mr. Lickteig visited him in prison somewhere between ten and fifteen times, that he showed "an extremely low level of interest" in the case and "a high level of enthusiasm" in attempting to convince Mr. Verdin-Garcia to plead guilty. Mr. Verdin-Garcia maintains that Mr. Lickteig failed to discuss investigations or trial strategies and did not share information about some of the Government's witnesses and trial evidence.

Piecing together all of these various documents, the court is left with only the following specific facts relating to an alleged communication breakdown: Mr. Verdin-Garcia asked Mr. Lickteig to reply to his letter and not wait until the last minute (perhaps implying that in the past, Mr. Lickteig had waited until the last minute to respond); Mr. Verdin-Garcia said that Mr. Lickteig did not keep him informed about the status of the appeal and failed to promptly send a copy of the Government's appellate brief; and Mr. Lickteig showed low interest in the case and tried to convince Mr. Verdin-Garcia to

plead guilty.[1]

Although "a complete breakdown in communication between an attorney and client may give rise to a presumption of ineffectiveness," *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000), "it is at least possible for a defendant to receive effective assistance of counsel even in the face of no communication with his attorney. . . . Good communication does not guarantee effective assistance of counsel, and bad communication does not guarantee ineffective assistance of counsel." *United States v. Lott*, 310 F.3d 1231, 1252 (10th Cir. 2002). Indeed, the Supreme Court has declined to find a constitutional right to a meaningful relationship between an accused and his counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983) ("[W]e reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." (footnote & citation omitted)).

"To prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *Lott*, 310 F.3d at 1249. Mr. Verdin-Garcia's evidence is very, very far from this standard. Although he has identified (or implied) a couple of times over the course of Mr. Lickteig's three-and-one-half-year representation where Mr. Lickteig failed to

_____

[1] Mr. Verdin-Garcia also reiterates here that his attorney failed to inform him about Government witnesses and exhibits and that his attorney should have obtained an independent translation of the audio recordings. The court has addressed those particular claims above.

reply as promptly as Mr. Verdin-Garcia would have liked or failed to act more interested in the case, it cannot be said that these instances resulted in such a severe and pervasive conflict so as to yield constitutionally deficient representation. The evidence Mr. Verdin-Garcia marshaled is thus insufficient to support an ineffective assistance claim based on communication problems.

R.    *Ground 3*

Ground 3 of Mr. Verdin-Garcia's motion purports to allege misconduct before the grand jury, but instead is actually another ineffective assistance claim. Mr. Verdin-Garcia suggests that his attorney was ineffective for failing to challenge the indictment based on misconduct. The only instance of "misconduct" Mr. Verdin-Garcia identifies relates to testimony of a DEA agent during grand jury proceedings that the defendants were using a code when talking about drugs. Mr. Verdin-Garcia notes that at trial, however, that DEA agent did not testify about code translations; instead Ms. Gardner, who testified at trial about the translations of the audio tapes, discussed the "code" words. It is unclear precisely why Mr. Verdin-Garcia believes that these facts provided his attorney with a basis to challenge the indictment.

Moreover, Mr. Verdin-Garcia asserts that these facts make a sufficient showing to warrant disclosure of the grand jury transcripts. Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts permits discovery with leave of the district judge "for good cause." In order to show "good cause" under Rule 6(a), a petitioner must provide the court with "specific allegations [that] show reason to

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "Mere speculation" of some exculpatory material is "unlikely to establish good cause for a discovery request on collateral review." *Strickler v. Greene*, 527 U.S. 263, 286 (1999).

Thus, Ground 3 fails to support a claim of ineffective assistance or a request for disclosure of grand jury transcripts.

### S.    Grounds 1.13 and 1.19

Mr. Verdin-Garcia argues that the enumerated instances of ineffective assistance rise to the level of a constitutional violation individually and cumulatively. Cumulative-error analysis applies only where the record reveals two or more actual errors, and a petitioner is entitled to relief only if the entire proceeding was so fundamentally unfair as to constitute a violation of his due process rights. *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir. 1997). Mr. Verdin-Garcia, however, has not shown multiple trial errors or that his conviction and sentence were so fundamentally unfair as to violate due process.

## III.    Grounds 2, 4, 5, 8, 9, and 10 – Procedurally Defaulted

"Generally, a habeas petition cannot be used to substitute for direct appeal." *Latu v. Ashcroft*, 375 F.3d 1012, 1017 (10th Cir. 2004). Thus, § 2255 motions "are not available to test the legality of matters which should have been raised on direct appeal." *Warner*, 23 F.3d at 291(citations omitted). When a petitioner "fails to raise an issue on

direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).

Mr. Verdin-Garcia failed to raise Grounds 2, 4, 5, 8, 9, and 10 on direct appeal.[2] He is therefore barred from raising them in a § 2255 motion unless he can show cause and prejudice. Mr. Verdin-Garcia made no effort to satisfy that standard, even after the Government asserted procedural default in its response brief. Although, ineffective assistance of appellate counsel can establish cause to overcome the procedural bar, *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993), Mr. Verdin-Garcia made no allegation that his appellate attorney was ineffective for not raising these issues.

Thus, he has procedurally defaulted on these grounds and may not raise them in his § 2255.

## IV.    Ground 6 – Decided on Direct Appeal

Mr. Verdin-Garcia may not raise in his § 2255 motion any issue that the Tenth Circuit decided on direct appeal. *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to §

---

[2] Due to the nature of ineffective assistance claims generally, Mr. Verdin-Garcia's ineffective assistance claims addressed above are not barred even though they were not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

2255."); *see also United States v. Warner*, 23 F.3d 287, 289 (10th Cir. 1994) ("[T]he issues Defendant raised in his § 2255 motion had either been decided on direct appeal or should have been raised on direct appeal and were therefore procedurally barred.").

In Ground 6, Mr. Verdin-Garcia argues that the court "failed to adequately consider and apply all the sentencing factors as they relate to the purposes of sentencing." He then cuts-and-pastes much of the argument from his brief on appeal. Indeed, the Tenth Circuit addressed this argument and concluded that the district court did not err in calculating and imposing Mr. Verdin-Garcia's sentence. *Verdin-Garcia*, 516 F.3d at 898-99. Thus, Mr. Verdin-Garcia may not relitigate this issue under the auspices of a § 2255 petition.

## V.      Ground 11 – Cumulative Errors

Mr. Verdin-Garcia again makes a cumulative-errors argument. As discussed above, however, he has not demonstrated multiple errors or that his trial and appeal were so fundamentally unfair as to violate the constitution.

## VI.     Motion for Appointment of Counsel (doc. 302)

Mr. Verdin-Garcia also asks this court to appoint him an attorney. There is, however, no constitutional right to counsel beyond the direct appeal of a conviction. *Swazo v. Wyo. Dep't of Corrs.*, 23 F.3d 332, 333 (10th Cir. 1994). "[T]he right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 296) is **denied**.  His motion for appointment of counsel (doc. 302) is **denied**.


**IT IS SO ORDERED** this 20th day of April, 2010.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge