IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

       **Plaintiff,**

**v.**                                                                                            Case No. 05-20017-01-JWL

**Fidencio Verdin-Garcia,**

       **Defendant.**

## MEMORANDUM & ORDER

In February 2005, defendant Fidencio Verdin-Garcia and five codefendants were indicted for their roles in a large marijuana and methamphetamine trafficking ring based in and around Kansas City, Kansas. The indictment included multiple charges of conspiracy, possession and distribution of methamphetamine, and use of a communications facility to facilitate the commission of a drug felony. The case proceeded to trial, and, at the conclusion of the evidence, the jury found defendant guilty on fourteen counts. At the time of defendant's sentencing, the Guidelines as applied to defendant provided for a base offense level of 38, an adjusted offense level of 44, a criminal history category of I, and a resulting advisory Guidelines range of life imprisonment. The court ultimately sentenced defendant to three terms of life imprisonment and eleven terms of four years' imprisonment to run concurrently. He appealed, and the Tenth Circuit affirmed his conviction and sentence. *United States v. Verdin-Garcia*, 516 F.3d 884 (10th Cir. 2008).

This matter is now before the court on defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 460). The Tenth Circuit has endorsed a three-step test for

district courts to utilize in connection with motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d1035, 1042-43 (10th Cir. Mar. 29, 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, a court may reduce a sentence if the defendant administratively exhausts his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. at 1042.[1] A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others. *Id*. at 1043. But when a district court grants a motion for compassionate release, it must address all three steps. *Id*. Because defendant's motion so clearly fails with respect to two of the prerequisites, the court addresses both in the context of this case.[2]

*Extraordinary and Compelling Reasons*

In his motion, defendant contends that compassionate release is warranted because he faces a "substantial likelihood of future complications to his lungs, heart and health" after contracting COVID-19 in BOP custody and that the conditions of confinement during the pandemic have

---

[1] The government concedes that defendant has exhausted his administrative remedies such that the court has jurisdiction to consider the motion on its merits.

[2] Defendant has also filed an ex parte motion for the appointment of counsel (doc. 470) to assist him in connection with his compassionate release motion, which was filed under seal. That motion is denied. There is no constitutional right to counsel beyond the direct appeal of a conviction. *Swazo v. Wyo. Dep't of Corrs.*, 23 F.3d 332, 333 (10th Cir. 1994); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Defendant's pro se motion for compassionate relief reflects that he is able to articulate his arguments clearly and coherently. Thus, the appointment of counsel at this point is unnecessary.

caused him severe anxiety and depression. The medical records do not support defendant's unsupported assertion that he faces a likelihood of complications from COVID-19. Significantly, the records reflect that defendant tested positive for COVID-19 on December 8, 2020 and that he was asymptomatic at the time of that diagnosis. He was screened for COVID symptoms at least eight times between his positive test and January 14, 2021. Each time, defendant's body temperature, oxygen levels and heart rate were within normal ranges and each time he denied having a cough, shortness of breath, muscle pain, fatigue, chills or loss of taste and smell. There is nothing before the court indicating that defendant suffered any complications at all from the virus, let alone any evidence supporting defendant's assertion that future complications are likely to result from that asymptomatic infection. Indeed, the fact that defendant has already contracted and recovered from COVID-19 cuts against his argument that compassionate release is warranted. *See United States v. Funez*, 2021 WL 168447, at *3 (D. Colo. Jan. 19, 2021) (finding it significant that the defendant had already contracted COVID-19 and recovered without incident). Moreover, even assuming that defendant could or would contract COVID-19 a second time,[3] there is no reason to believe he would experience an adverse outcome given his experience in December. *United States v. Rodriguez-Maciel*, 2021 WL 147985, at *2 (D. Kan. Jan. 15, 2021) (general fear of reinfection not sufficient to warrant compassionate release where defendant recovered from

---

[3] See *Reinfection with COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020) (while some reinfections are expected, cases of reinfection with COVID-19 remain rare); *see also United States v. Keys*, 2020 WL 6700412, at *3 (E.D. Cal. Nov. 13, 2020) ("While a CDC representative recently has suggested that based on current evidence reinfections are likely uncommon within 3 months, this observation is not so conclusive so as to provide clarity regarding whether someone who has been infected is immune for any period of time, no matter how brief.").

COVID-19); *United States v. Simpson*, 2021 WL 147986, at *2 (D. Kan. Jan. 15, 2021) (same). In sum, defendant has not shown an extraordinary and compelling reason sufficient for this court to consider early release under the statute.

The court turns, then, to defendant's assertion that he suffers from anxiety and depression due to increased confinement measures in place at his correctional facility as a result of the pandemic. It is significant to the court that neither defendant nor his medical records indicates that defendant has sought treatment for his mental health. Moreover, the mental health challenges alleged by defendant as a result of confinement during the pandemic are likely suffered by many inmates. Those challenges do not present an individualized risk to defendant sufficient to warrant a change in defendant's sentence. Finally, defendant is presently incarcerated at Victorville Medium II FCI, where no inmates have active COVID infections, only one staff member has an active infection, and vaccination distribution is well underway—all of which should alleviate defendant's mental health challenges and weigh against compassionate release. *See United States v. Strong*, 2021 WL 1033215, at *5 (D. Haw. Mar. 17, 2021) (increased availability of vaccines and lower rates of COVID-19 infection weigh against compassionate release).

*Section 3553(a) Factors*

The government also opposes defendant's motion on the grounds that the § 3553(a) factors weigh against early release in light of the nature and seriousness of the defendant's offenses and the need to provide just punishment for those offenses. On this point, the court easily concludes that any risk to defendant's health if he remains in custody is outweighed by the need for continued incarceration under the specific circumstances presented here. In other words, the court finds that

compassionate release would materially depart from an appropriate § 3553(a) sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the consideration of applicable § 3553(a) factors if court finds that extraordinary and compelling reasons warrant reduction). The § 3553(a) factors include (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6). Applying those factors here, the court declines to reduce defendant's sentence.

By way of background, in July 2015, defendant sought a reduction in his sentence to 360 months based on Amendment 782. At that time, the court acknowledged that a reduction to 360 months was authorized. Nonetheless, in light of the § 3553(a) factors, the court declined to reduce defendant's sentence. As the court explained at that time, when calculating an appropriate sentence for defendant in September 2006, the court noted that the evidence was "absolutely overwhelming" that the quantities attributable to defendant "far exceed[ed]" the amount necessary to arrive at a base offense level of 38. In fact, the court determined with ease that the drug quantity attributable to defendant was 89,809.58 kilograms of marijuana equivalent—far beyond the 30,000 kilograms of marijuana equivalent necessary to reach a base offense level of 38 at that time. The court also noted that this case involved "the most significant quantities of drugs" that the court had seen in any prosecution.[4]

---

[4] In his motion, defendant contends that the § 3553(a) factors weigh in his favor because "much of the criminality underlying defendant's life sentence is the distribution of marijuana" and,

5

Other facts supported the court's conclusion that a life sentence remained appropriate despite authorization for a reduction. When the court sentenced defendant to life in September 2006, it did so without any qualms whatsoever. In addition to the sheer volume of drugs involved in this case, the court noted during sentencing that defendant's crimes involved weapons and the utilization of young people as recruited associates; that defendant showed no respect for the law at any stage; that defendant demonstrated a complete lack of remorse for his crimes; he engaged in a leadership role in the crimes; and he demonstrated a willingness to engage in criminal conduct as long as he had the opportunity to do so. The court also highlighted defendant's disciplinary record from his incarceration, which demonstrated that defendant had numerous serious infractions during his incarceration. The Tenth Circuit affirmed this court's decision to deny a sentence reduction to defendant. *United States v. Verdin-Garcia*, 824 F.3d 1218 (10th Cir. 2016).

The court's concerns as expressed in July 2015 have not changed and it is apparent to the court that continued incarceration is necessary to comply with § 3553(a). *United States v. Clark*, 2021 WL 1140690, at *3 (D. Kan. Mar. 25, 2021) (denying compassionate release in part because defendant refused to acknowledge his culpability); *United States v. Tsosie*, 2021 WL 763976, at *3 (D. Ariz. Feb. 26, 2021) (denying compassionate release in part because defendant showed a lack of remorse and refused to accept responsibility for his crime); *United States v. Kolodesh*, 2020 WL 5292145, at *3 (E.D. Pa. Sept. 4, 2020) (compassionate release not warranted where

---

because of "so many lenient changes in federal criminal law" relating to marijuana, he would likely not be sentenced to life if prosecuted today for the same offenses. It appears that defendant may be confusing "marijuana equivalent" amounts with marijuana amounts. The record reflects that defendant was held accountable for significant amounts of methamphetamine and that the distribution of marijuana only minimally impacted defendant's sentence.

6

defendant was not remorseful for criminal acts and consistently blamed others for his conduct); *United States v. McIntyre*, 2021 WL 1226556, at *4 (W.D.N.C. Mar. 31, 2021) (denying compassionate release in light of defendant's lengthy criminal history, the nature of his crimes, and his risk of recidivism); *United States v. Cook*, 2021 WL 67208, at *2 (W.D. Mo. Jan. 7, 2021) (defendant's lengthy criminal history and recidivism weighed in favor of further incarceration).

For these reasons, defendant's release from custody would be inconsistent with public safety, the need to provide just punishment; and the need to promote respect for the law and would fail to reflect the seriousness of his offenses.  In short, continued incarceration is appropriate as defendant's sentence remains sufficient but not greater than necessary to serve the purposes of sentencing. The motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for compassionate release (doc. 460) is denied and defendant's ex parte motion for appointment of counsel (doc. 470) is denied.

**IT IS SO ORDERED.**

Dated this 26th  day of May, 2021, at Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge